MICHAEL GOLDSTEIN *et al.* Appellees, *vs.* BESSIE RASKIN
*et al.* Appellants.

*Opinion filed December 22, 1915—Rehearing denied Feb. 2, 1916.*

1. EASEMENTS—*easement is not presumed to be in gross.* An
easement will not be presumed to be in gross when it can fairly be
construed to be appurtenant to some other estate.

2. SAME—*instrument creating the easement need not describe
the dominant estate.* While an easement appurtenant cannot exist
without a dominant estate to which it is to become appurtenant,
yet it is not a rule of equity that the instrument creating the ease-
ment must describe the dominant estate.

3. SAME—*when easement of passage is appurtenant and not in
gross.* Where parties owning adjoining lots enter into a written
instrument duly signed, sealed and acknowledged, which recites
that the parties of the first part, in consideration of $250 in hand
paid by the party of the second part, agree unto the party of the
second part that a certain described strip of land on the lot of the
parties of the first part and adjoining the lot of the party of the
second part "shall be left vacant at all times hereafter and is to be
used for no other purpose except for passage and that no building
of 'any kind to be constructed" on such strip, an easement appur-
tenant to the lot of the party of the second part is created, even
though such lot is not described in the instrument.

APPEAL from the Circuit Court of Cook county; the
Hon. JESSE A. BALDWIN, Judge, presiding.

LOUIS GREENBERG, for appellants:

DARROW, BAILY & SISSMAN, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This proceeding is a bill in equity praying that appellees
may be decreed to have permanent enjoyment of an ease-
ment in, and for an injunction to restrain appellants, Bessie
Raskin and Max Raskin, from maintaining any fence, rail,
barricade or other obstruction on, the east seven feet of
lot 4, in block 2, in Suffern's subdivision of the southwest
quarter of section 6, township 39, north, range 14, east of

the third principal meridian, Cook county, Illinois, and to compel them to remove the fence and other obstructions wrongfully erected thereon by them, and to forever maintain the same as a common passageway for the use and enjoyment of the owners of said premises and of appellees' premises thereto adjoining. Appellants filed a general demurrer to the bill. Upon a hearing the court overruled the demurrer, and appellants electing to stand by their demurrer and refusing to make further answer, the court entered a decree in accordance with the prayer of the bill.

The bill alleges, in substance, that appellees are the joint owners of lot 3, in block 2, in Suffern's said subdivision, and that it is a city lot located on West Division street, forty-eight feet west of Hoyne avenue and fronting on Division street, Chicago, having a frontage of twenty-four feet, and that the same immediately joins said seven-foot strip; that appellees acquired title to their premises by a deed of conveyance from Vincent Gangel and his wife; that prior to the making of said deed said Vincent Gangel acquired an easement, for the purposes of passage, in said strip, by an instrument in writing duly signed, sealed and acknowledged before a notary public by the said appellants, reading as follows:

"This agreement made this second day of October, A. D. 1911, between Bessie Raskin and Max Raskin, her husband, of the city of Chicago, county of Cook and State of Illinois, party of the first part, and Vincent Gangel, of the same place, party of the second part:

"*Witnesseth,* that for and in consideration of two hundred fifty ($250) dollars in hand paid (receipt of which is hereby acknowledged) to the party of the first part by the party of the second part, that the parties of the first part does hereby agree unto the party of the second part that [here follows description of said seven-foot strip] shall be left vacant at all times hereafter and is to be used for no other purpose except for passage and that no building of any kind to be constructed on said seven feet of lot 4."

The bill further avers that appellees, relying upon their right to such easement, prepared plans and specifications, and have, since buying said lot 3, erected thereon a three-

story brick building containing five flats or apartments and one store, expending thereon a large sum of money; that in compliance with the city ordinances they provided for the building appropriate stairways for ingress and egress to and from the various apartments on the west side of said building within one and one-half feet of the west line of the wall of their building, which stairways immediately join said passageway; that said building is about to be occupied by various tenants and is to be tenanted by at least five families, all members of which will have to use said stairs and passageway if they have ingress and egress to and from the building; that for the purpose of avoiding any difficulties and to make certain their rights, appellees, long prior to building on their lot, gave notice in writing to appellants of their intention to erect their said building and that the west wall of their building would be on the boundary line between said lots; that they intended to avail themselves of the easement acquired by Gangel for a common passageway under said sealed contract, in and by which "you are to build no obstruction thereon of any kind," and stated in the notice that it was their intention to use the strip as a common passageway with appellants; that in utter disregard of appellees' rights appellants have erected upon said seven-foot passageway a stairway leading to their basement which takes up approximately one-half of said passageway to a distance of thirty feet south thereof, and have further obstructed the passageway by erecting a railing around said areaway and basement entrance; that since the completion of the building, for the purpose of harassing appellees, with malicious intent and in the hope of extorting money from appellees, they have clandestinely, and at a time when appellees were unable to apply for equitable relief, caused a fence to be erected near the east line of said passageway and near the west line of the premises of appellees, barricading the west entrance of appellees' building, and is so close to appellees' building that it is impossible for an

adult person to pass between said fence and the building, and the west entrances to said building so built to comply with said health and fire ordinances are useless and the building unfit for habitation if said fence is permitted to so remain, and that great and incalculable damage is being done appellees by the continuance there of said obstructions and that valuable leases will be lost to them, etc. By their demurrer appellants admitted all of the material facts well pleaded in appellees' bill.

Appellants strenuously urge that inasmuch as no dominant estate is described in the contract between them and Gangel the easement created thereby was one in gross,—that is to say, only personal to Gangel and not appurtenant or appendant to said lot 3 and did not pass by Gangel's deed thereto to appellees. To hold that the easement is in gross would, in effect, be to nullify the meaning of the words in the contract that the east seven feet of lot 4 "shall be left vacant at all times hereafter and is to be used for no other purpose except for passage, and that no building of any kind to be constructed" thereon, since, if the easement created could not be aliened or passed by inheritance, it would terminate on the death of Gangel. An easement is never presumed to be in gross when it can be fairly construed to be appurtenant to some other estate. (*Oswald* v. *Wolf,* 126 Ill. 542; *Kuecken* v. *Voltz,* 110 id. 264.) Another rule of interpretation applicable to the contract in question is, that while the right of the parties must be ascertained from the words of the instrument creating it, still "it is always admissible, in determining the effect of an instrument, to look to all the facts and circumstances surrounding the making of it." *Ashelford* v. *Willis,* 194 Ill. 492; *Straus* v. *Putta,* 265 id. 57.

At the time this contract was made, as alleged in the bill, Gangel was the owner of said lot 3 and the appellants owned lot 4, and the lots were adjoining lots. The seven-foot strip in question was part of lot 4, and it adjoined

lot 3. It was to be vacant at all times after the contract and was to be used for no other purpose except for passage. The consideration for the agreement was $250, and the bill alleged that Gangel actually paid it to appellants. The conclusion is irresistible that Gangel bought this easement to use and enjoy in connection with the use and occupancy of his lot, and that he wanted and intended that use and enjoyment to be perpetual and pass to his heirs at his death or to his grantees in case he sold his lot. Appellants must have so understood and intended the grant. The grant is inconsistent with the idea of an easement in gross, as both parties knew, and must be presumed to know, that Gangel would not live forever or be living "at all times" thereafter. A very substantial price was paid for the easement, considering the further fact that the strip was only to be used for a right of way or passage. The servient estate is expressly mentioned in the contract, and the dominant estate, while it is not expressly mentioned, is as clearly made to appear by the attendant circumstances as lot 3 as if it had been described in the contract. In fact, the easement could have been of no special value to Gangel or anyone else except to the owners and occupants of said lots 3 and 4.

It is true that an easement appurtenant cannot possibly exist without a dominant estate to which it is to become appurtenant. It has never been established, however, as a rule in equity in this State, that the instrument creating the easement must describe the dominant estate. (*Straus* v. *Putta, supra.*) The case of *Garrison* v. *Rudd,* 19 Ill. 558, has no application in this case, as that was a common law case for trespass, where the rules of law controlled.

The decree of the circuit court is affirmed.

*Decree affirmed.*